[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 6, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-11043
Non-Argument Calendar

_____

BIA No. A29-596-519

MIGUEL ANGEL CORDOVA-BRAMON,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(November 6, 2006)**

Before TJOFLAT, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

Miguel Angel Cordova-Bramon, proceeding *pro se*, petitions for review of a Board of Immigration Appeals ("BIA") decision denying his motion to reopen removal proceedings pursuant to 8 C.F.R. § 1003.2(c). Cordova-Bramon argues that his untimely motion to reopen comes within an exception to the timely filing requirement based on changed circumstances within his native country of Peru. Upon review of the record, and upon consideration of the briefs of the parties, we find no reversible error.

## STANDARD OF REVIEW

We review the BIA's denial of a motion to reopen for abuse of discretion. *Gbaya v. U.S. Att'y Gen.*, 342 F.3d 1219, 1220 (11th Cir. 2003)(*per curiam*). "In this particular area, the BIA's discretion is quite broad." *Id.* (internal quotation marks omitted). Our review of a denial of a motion to reopen in removal proceedings is limited to determining "whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." *Garcia-Mir v. Smith*, 766 F.2d 1478, 1490 (11th Cir. 1985)*(per curiam*)(internal quotation marks omitted).

## BACKGROUND

In January 2002, the Immigration and Naturalization Service ("INS")[1]

---

[1] On November 25, 2002, President Bush signed into law the Homeland Security Act of 2002 (HSA), Pub. L. No. 107-296, 116 Stat. 2125. The HSA created a new Department of Homeland Security (DHS), abolished the INS, and transferred its functions to the new department. However,

2

served Cordova-Bramon, a native and citizen of Peru, with a notice to appear, charging him with removability under the Immigration and Nationality Act ("INA") § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), for seeking to procure entry into the United States through fraud, and under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), for attempting to enter the United States without possession of a valid immigrant visa or other entry document. In a credible fear interview with INS, Cordova-Bramon indicated that he feared returning to Peru. Cordova-Bramon stated that he was the manager of Mangos Restaurant and, in April 2000, members of the Destroyers, a gang involved in criminal activities, held him at gunpoint and robbed the restaurant. Cordova-Bramon stated that the members of the Destroyers later threatened him because he had assisted the police in capturing one of the perpetrators and gave a statement to the police.

Cordova-Bramon filed for asylum, withholding of removal, and relief pursuant to the United Nations Convention on Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT relief"). To be eligible for asylum, an applicant must show that he is unable or unwilling to return to his home country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

because this case was initiated while the INS was still in existence, this opinion refers to the agency as the INS rather than the DHS.

8 U.S.C. § 1101(a)(42). Cordovo-Bramon stated that he had testified against the leader of the Destroyers, and that the Destroyers had threatened him because of his testimony. He alleged persecution on account of membership in a particular social group, which was based on the threats he received by the Destroyers after he testified against and helped prosecute one of its leaders

At his asylum hearing in August 2003, Cordova-Bramon testified that members of the Destroyers had been looking for him and their attorney threatened him after he had testified against one of its leaders. Cordova-Bramon also testified that the police would not protect him. He also clarified that he sought asylum based on membership in a particular social group, which was a witness to a crime who was not afforded police protection.

The Immigration Judge ("IJ") denied Cordova-Bramon relief in the form of asylum and withholding of removal. The IJ expressed concerns as to whether persons who testified against a member of the Destroyers consisted of a social group within the meaning of § 1101(a)(42). Furthermore, the IJ found that Cordova-Bramon had not established that he objectively suffered past persecution or had a well-founded fear of future persecution on account of any statutory ground. The IJ also found that Cordova-Bramon failed to submit any evidence that the authorities in Peru were unable or willing to protect him and failed to establish that others similarly situated to him had been harmed. The IJ also denied Cordova-

4

Bramon asylum as a matter of discretion, because he had previously tried to enter the United States using a fraudulent document. Cordova-Bramon appealed the IJ's decision to the BIA and argued that the IJ erred in finding that he was not eligible for the relief sought. On October 14, 2004, the BIA affirmed the IJ's decision without opinion. Cordova-Bramon did not appeal the BIA's decision. On November 15, 2004, Cordova-Bramon filed a motion to reconsider, which the BIA denied on December 30, 2004. Cordova-Bramon did not appeal this decision.

On September 15, 2005, Cordova-Bramon filed a motion to reopen his removal proceedings in order to reapply for asylum. Cordova-Bramon conceded that his motion to reopen was untimely; however, he argued that it came within the exception to the timely filing requirement because of changed circumstances within Peru. The BIA denied Cordova-Bramon's motion to reopen finding that he had failed to show how conditions had materially changed in Peru. Cordova-Bramon filed the instant appeal.

## DISCUSSION

"[A]n alien may file only one motion to reopen removal proceedings . . . and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2). An exception to the timely filing requirement exists if, *inter alia*, the alien is reapplying for asylum and withholding of removal "based on

5

changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." *Id.* at § 1003.2(c)(3)(ii).

In this case, the BIA did not abuse its discretion in denying Cordova-Bramon's motion to reopen, because he did not show changed circumstances in Peru so as to come within the exception to the timely filing requirement. The evidence he submitted did not show how circumstances had changed in Peru; rather, the evidence showed that members of the Destroyers had continued to look for him because of his testimony against one of its leaders. This is the same claim he presented in his original asylum application, and the same claim on which the IJ ruled.

While the evidence submitted in his motion to reopen consists of alleged threats against him directed towards his parents, coworkers, neighbors, and friends by the Destroyers, Cordova-Bramon failed to show how these incidents constitute a material change in the conditions within Peru. The evidence indicates that the threats to Cordova-Bramon's parents had actually decreased since 2000, and that the authorities were willing to provide assistance to his parents. Cordova-Bramon submitted no evidence that the authorities were unwilling or unable to protect him. *See Marzariegos v. U.S. Att'y Gen.*, 241 F.3d 1320, 1327 (11th Cir. 2001). In

6

essence, the evidence Cordova-Bramon submitted demonstrated ongoing threats by the Destroyers because of his testimony, not how circumstances have changed within Peru since the IJ rendered the original decision denying his claim.

Furthermore, much of the evidence submitted by Cordova-Bramon was available during his initial removal hearing. His parents and neighbors indicated that they have received threats from the Destroyers on a continual basis since 2000. Former co-workers at Mango's Restaurant stated that since 2000 unidentified individuals had inquired about Cordova-Bramon's whereabouts. This evidence was both available during his removal hearing in 2003 and does not constitute a change in circumstances pursuant to 8 C.F.R. § 1003.2(c)(3)(ii).

Since Cordova-Bramon's motion to reopen was not timely, and he did not present evidence establishing changed conditions in Peru, the BIA's action in dismissing Cordova-Bramon's motion to reopen was not arbitrary, or capricious or otherwise an abuse of discretion. *See Gracia-Mir*, 766 F.2d at 1490. Accordingly, we deny the petition.

**PETITION DENIED.**